It is claimed by the plaintiff company that it is necessary for it to have the lands described in its petitions, for the construction, maintenance and operation of its railroad.
It is claimed by defendant company that plaintiff has no legal *46 right to appropriate the same, as said lands are necessary for its usé and the enlargement of its railroad facilities, as demanded by the industrial increase in the Ohio valley in and about this city and Toronto.
This case in some particulars raises a new question' in railroad building in this state, and one which has not been adjudicated very definitely in Ohio; but other states furnish us precedents for our guidance in this particular.
The statutes of Ohio require that a railroad company seeking to appropriate to its use lands of corporations and persons, must show: First, That it is a corporation legally organized and chartered by the proper authorities of the state; second, that it has failed to agree with the owners for the lands desired; third, that the lands sought are necessary for its purpose in the construction, maintenance and operation of its railroad.
The two first mentioned requirements are conceded by the defendant company and the court so finds, except in one instance hereafter mentioned, in that part of this case pertaining to the Turnbull property, as to the disagreement of the parties.-
The necessity of plaintiff for said lands described in its petition is the real issue in this ease. The plaintiff has gone further in this case to show its necessity for said lands than is ordinarily done. It has gone so far as to show the necessity of the building of the road to meet the trade demands of the community. While that has not been held as essential by the court, yet it was not objected to by the defendant’s counsel and was allowed to go in as testimony in this case.
As to the plans of the plaintiff company in the construction of its road, as shown by its plats and the testimony, it seems that the lands sought herein are necessary for its construction, but is its necessity such as to justify the taking of the lands of the defendant company, is the vital question in this ease.
It has been shown in the court reports cited by plaintiff in the syllabi, that: “A railroad appropriating to its use the lands of another railroad company must show its needs are so absolute that without such appropriation the grant of such company will be defeated.” “That it is necessary for the proper exercise of its franchise,” etc. “Lands held by a railroad corpora *47 tion but not used, for, or necessary to a public use, may be taken by another similar corporation for railroad purposes as if held by an individual owner.” “The mere fact that a railroad compány may, in the future, require for a double track a portion of its right of way not occupied by its road-bed, does not preclude the condemnation of the unoccupied part by another company.” “The property belonging to a railroad company and not in actual use, or necessary to the proper exercise of the franchise thereof, may be taken for the purpose of another railroad.” In Ohio the rule is well established that a second appropriation of land, formerly appropriated by a public use, can not be made when the second appropriation is inconsistent with the first and intends to deprive the corporation on first acquiring such public use of the full and free enjoyment thereof.” “It is a generally acknowledged fact that when a corps of engineers establish a line, that that is the one adopted and not interfered with by the courts. ’ ’
Those cited by defendant are as follows, as read from the syllabi: “It is a well established rule that property already appropriated in the proper exercise of the power of eminent domain, can not be taken for another public use which will wholly defeat or supercede the former use. Land already acquired by one railroad corporation and held for the necessary enjoyment of its essential franchises, can, not be condemned and appropriated in the usual way by another corporation; second, a railroad can only acquire and hold the amount of real estate commensurate with its necessities,” etc.
It is to be seen by the citations of both parties that they are largely similar. Testimony has been offered here by the plaintiff to show its necessity for the lands mentioned in its petition. The defendant company has offered testimony to show that it is very necessary for it to retain said lands as they now stand, for its enlargement of main tracks and yards for the carrying on of its increasing business.
The testimony shows that defendant company acquired two of said four tracts of land sought to be appropriated, after the filing of plaintiff’s petition — from Hannah Nee and the Turn-bull heirs, who were previously made defendants in similar suits for the appropriation of said lands. It has been shown that the *48 defendant purchased from said Hannah Nee her entire tract of land of — acres, through which it had a right of way of — feet and had been operating its road for over forty years.
Upon a personal examination of these tracts of land it will be seen at the Nee tract that it is not necessary for the defendant company to have the same for the construction of its yards as shown by the testimony offered by it. The plaintiff’s proposed tracks diverge from defendant’s present right of way soon after entering on said tract and leaves room for the yards as desired by the defendant company between said right of way, except with some slight alterations they may have to make and not interfere with their desired yards or any desired changes they may have to make. It shows also that they can double track their road and make any changes desired, and not be interfered with at this point by the plaintiff company; and that said defendant company has never used any part of the land in controversy in the operation of its railroad, and the testimony shows that there is plenty of room for the defendant company to build three tracks on their present right of way and the necessity for any more tracks has not been shown to the satisfaction of the court.
And it has been shown to the satisfaction of the court that the plaintiff company, in the construction of its road, would not encroach on the said defendant company’s privileges for any necessary desired changes by it.
At the tract south of South street in this city, or what has been designated as the South street tract, a narrow strip of land of defendant company lies eastward of its present yards and has never been used by it, and this plaintiff company’s proposed tracks will come very close to the yards of defendant company, but that other lands near by are available for enlarged yards of defendant company and it does not seem that it would be necessary to enlarge its yards eastward and where the plaintiff company contemplates building its road, and an extension in that direction would give so little in addition to the present yards that it would hardly be worth while to change the present yards and build the same.
From the authorities cited it is shown that a railroad company building a track and appropriating land of another rail *49 road company longitudinally, must show a great necessity for the land taken. It appears that at this point the plaintiff company could not at all be able to construct its railroad without the lands they are seeking to appropriate, and that the same is absolutely necessary for the construction of plaintiff’s road.
The same condition exists at the Castner land, for there the location of the plaintiff company’s road is largely over the river bank and partly in the river at low water mark, and, of course, has never been used by defendant company in the operation of its railroad.
It will be seen by this that it is absolutely necessary that this plaintiff company, in order to build its railroad, should have the lands it seeks to appropriate, and that the defendant company is not needing the same to meet the necessities for enlarging and operating its road.
As to the Turnbull tract, some new phases arise. A part of this tract has been purchased by defendant company after the filing of its petition. The petition shows that the plaintiff company filed a petition for the appropriation of all lands belonging to the Turnbull estate east of the Cleveland & Pittsburgh Railroad Company.
The testimony of the parties as to this tract of land shows that there is considerable variance and controversy as to the sufficient effort of plaintiff company’s agents to purchase the land, and their final disagreements as required by the statutes. It is stated by plaintiff’s attorneys and agents that an offer was made for sixty feet at one time and eighty feet at another time. The witnesses, Captain Oliver and Mrs. Oliver, his wife, and the only parties and owners with whom any conversation was had regarding said tract, say that they had no understanding that any amount was offered for the whole tract as described in plaintiff’s petition, or that any fixed sum was mentioned for the eighty foot tract or the sixty foot tract, or that plaintiff offered or said that they would have given a thousand dollars for a thirty-five foot strip, of which the Pennsylvania or The Cleveland & Pittsburgh Railroad had then optioned.
To meet the demands of the statute regarding the disagreement as to offers, there must of necessity be a definite understanding as to a proposition by the parties. The fact that there *50 is a misunderstanding now as to the amount offered precludes the idea of a strict disagreement. A proposition should be made in cases of this kind for a definite amount of ground for a definite sum of money. The appropriating company should be confined to the amount of land mentioned in its petition, and the amount of money offered should be clear and explicit, so that the defendant can be clear about their disagreement.
In this case plaintiff asks to grant its petition and admit its plat as to the Turnbull property. That would, of necessity, change the conditions of the opportunities in offering to purchase the same and make it inconsistent with an effort to purchase by plaintiff and a disagreement of the parties.
The testimony shows that considerable of a controversy was had by the Turnbull heirs, the agents and attorneys of the plaintiff company, but the fact that they disagreed on any sum being offered in an effort to purchase shows that there wasn’t sufficient caution or explicit attention given to the offers to purchase the same. From reading the testimony I am more convinced on that point than when I heard the testimony given.
From the testimony of the whole case I find the preliminary questions in favor of the plaintiff company, except as to the Turnbull property, and in that, upon examination of the testimony, I am constrained to sustain defendant’s motion to dismiss the suit as to the Turnbull heirs, except I find in favor of the plaintiff company as against the defendant company on that part as purchased by said defendant company from the Turnbull heirs, as testimony that has been produced clearly shows that after the purchase of said land by the defendant company that plaintiff company offered to purchase the same from said defendant company and that a proper disagreement was had.
The cases cited are as follows:
By the plaintiff: Revised Statutes, Section 6445; 23 O. S., 510; 48 O. S., 273 and 293; 17 W. Va. Reports, 812, proposition 17; 110 N. Y., 119; 41 Fed. Rep., 293; Lewis on Eminent Domain, 633, 634 and 635, Section 267, 6 and c; 41 Pacific Rep., 232; Elliott on Railroads, Section 947.
By the defendant: 23 O. S., 523; 48 O. S., 273 and 293; Lewis on Eminent Domain, Section 267a, c; Elliott on Railroads, Vol. 3, Sections 922, 974; 8 Fed. Rep., 858; 41 Fed. Rep., 293-300; 17 W. Va. Reports, 855; 57 Fed. Rep., 945-7.